UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X



DEUTSCHE BANK TRUST COMPANY
AMERICAS, as Trustee

                             Plaintiff,

          - against -

ELLIOTT INTERNATIONAL, L.P.; LIVERPOOL
LIMITED PARTNERSHIP; SEI INSTITUTIONAL
INVESTMENTS TRUST HIGH YIELD BOND
FUND, an investment fund within SEI Institutional
Investments Trust; SEI INSTITUTIONAL
MANAGED TRUST HIGH YIELD BOND FUND,
an investment fund within SEI Institutional
Investments Trust; SEI STRUCTURED CREDIT
FUND, LP; SHINKIN CENTRAL BANK;
STRUCTURED PRINCIPAL STRATEGIES, LLC
ZAIS INVESTMENT GRADE LIMITED II;
DAVIS SQUARE FUNDING II CORP.; DAVIS
SQUARE FUNDING II, LTD.; SOCIÉTÉ
GÉNÉRALE, New York Branch; VERTICAL CDO
2004-1 CORP.; VERTICAL CDO 2004-1 LTD.;
TALCOTT NOTCH CBO I (DELAWARE) CORP.;
TALCOTT NOTCH CBO I LTD.; TRICADIA CDO
2003-1 CORP.; TRICADIA CDO 2003-1, LTD.;
MIZUHO SECURITIES CO., LTD.; SOJITZ
CORPORATION; SOJITZ CORPORATION OF
AMERICA; DEPOSITORY TRUST COMPANY, as
legal owner or holder of record of Notes under the
Indenture and legal owner or holder of record of
Preferred Shares under the Preferred Shares
Agreement; DOES 1 through 100, owners of
beneficial interests in the Notes under the Indenture;
and DOES 101 through 200, owners of beneficial
interests in certain Preferred Shares under the
Preferred Shares Agreement,

                             Defendants.

------------------------------------------------------------- X

No. 09-cv-

INTERPLEADER COMPLAINT



12545463

Plaintiff Deutsche Bank Trust Company Americas (the "Trustee"), as Trustee under an indenture dated September 18, 2002 (the "Indenture") between and among itself, Landmark II CDO, Ltd. as Issuer (the "Issuer"), and Landmark II CDO, Inc. as Co-Issuer (the "Co-Issuer" and together with the Issuer, the "Co-Issuers"), alleges and states that:

1. The Trustee is a New York banking corporation with its principal place of business at 60 Wall Street, New York, New York 10005.

2. Upon information and belief, Elliott International L.P. ("Elliott") is a Cayman Islands company with its principal place of business in George Town, Grand Cayman, Cayman Islands, the British West Indies.

3. Elliott is sued in this action as a claimant pursuant to 28 U.S.C. § 1335(a) because, upon information and belief, it is the beneficial owner of an interest in certain Class A Notes under the Indenture. A true and complete copy of the Indenture is attached as Exhibit A to this Complaint.

4. Liverpool Limited Partnership ("Liverpool") is a Bermuda limited partnership with its principal place of business in Hamilton, Bermuda.

5. Liverpool is sued in this action as a claimant pursuant to 28 U.S.C. § 1335(a) because, upon information and belief, it is the beneficial owner of an interest in certain Class A Notes under the Indenture.

6. Upon information and belief, SEI Institutional Investments Trust High Yield Bond Fund ("SEI Investments High Yield") is an investment fund within SEI Institutional Investments Trust, a Massachusetts trust with its principal place of business in Oaks, Pennsylvania.

7. SEI Investment High Yield is sued in this action as a claimant pursuant to 28 U.S.C. § 1335(a) because, upon information and belief, it is the beneficial owner of an interest in certain Class A Notes under the Indenture.

8. Upon information and belief, SEI Institutional Managed Trust High Yield Bond Fund ("SEI Managed High Yield") is an investment fund within SEI Institutional Investments Trust, a Massachusetts trust with its principal place of business in Oaks, Pennsylvania.

9. SEI Managed High Yield is sued in this action as a claimant pursuant to 28 U.S.C. § 1335(a) because, upon information and belief, it is the beneficial owner of an interest in certain Class A Notes under the Indenture.

10. Upon information and belief, SEI Structured Credit Fund, LP ("SEI Structured Credit") is a Delaware limited partnership with its principal place of business in Oaks, Pennsylvania.

11. SEI Structured Credit is sued in this action as a claimant pursuant to 28 U.S.C. § 1335(a) because, upon information and belief, it is the beneficial owner of an interest in certain Class A Notes under the Indenture.

12. Upon information and belief, Shinkin Central Bank is a Japanese banking corporation with its principal place of business in Tokyo, Japan.

13. Shinkin Central Bank is sued in this action as a claimant pursuant to 28 U.S.C. § 1335(a) because, upon information and belief, it is the beneficial owner of an interest in certain Class A Notes under the Indenture.

14. Upon information and belief, Structured Principal Strategies, LLC ("Structured Principal") is a Delaware limited liability company with its principal place of business in Hamilton, Bermuda.

15. Structured Principal is sued in this action as a claimant pursuant to 28 U.S.C. § 1335(a) because, upon information and belief, it is the beneficial owner of an interest in certain Class A Notes under the Indenture.

16. Upon information and belief, ZAIS Investment Grade Limited II ("ZAIS") is a Cayman Islands company with its principal place of business in George Town, Grand Cayman, Cayman Islands, the British West Indies.

17. ZAIS is sued in this action as a claimant pursuant to 28 U.S.C. § 1335(a) because, upon information and belief, it is the beneficial owner of an interest in certain Class A Notes under the Indenture.

18. Upon information and belief, Davis Square Funding II Corp. ("Davis Square Corp.") is a Delaware corporation with its principal place of business in Newark, Delaware.

19. Davis Square Corp. is sued in this action as a claimant pursuant to 28 U.S.C. § 1335(a) because, upon information and belief, it is a co-issuer of Davis Square Funding II, a collateralized debt obligation that is the beneficial owner of an interest in certain Class B Notes under the Indenture.

20. Upon information and belief, Davis Square Funding II Ltd. ("Davis Square Ltd.") is a Cayman Islands company with its principal place of business in George Town, Grand Cayman, Cayman Islands, the British West Indies.

21. Davis Square Ltd. is sued in this action as a claimant pursuant to 28 U.S.C. § 1335(a) because, upon information and belief, it is a co-issuer of Davis Square Funding II, a collateralized debt obligation that is the beneficial owner of an interest in certain Class B Notes under the Indenture.

22. Upon information and belief, Société Générale, New York Branch, is the New York branch of Société Générale, a French bank with its principal place of business in New York, New York.

23. Société Générale, New York Branch, is sued in this action as a claimant pursuant to 28 U.S.C. § 1335(a) because, upon information and belief, it is a beneficial owner of an interest in certain Class B Notes under the Indenture.

24. Upon information and belief, Vertical CDO 2004-1 Corp. ("Vertical Corp.") is a Delaware corporation with its principal place of business in Newark, Delaware.

25. Vertical Corp. is sued in this action as a claimant pursuant to 28 U.S.C. § 1335(a) because, upon information and belief, it is a co-issuer of Vertical CDO 2004-1, a collateralized debt obligation that is the beneficial owner of an interest in certain Class B Notes under the Indenture.

26. Upon information and belief, Vertical CDO 2004-1 Ltd. ("Vertical Ltd.") is a Cayman Islands company with its principal place of business in George Town, Grand Cayman, the British West Indies.

27. Vertical Ltd. is sued in this action as a claimant pursuant to 28 U.S.C. § 1335(a) because, upon information and belief, it is a co-issuer of Vertical CDO 2004-1, a collateralized debt obligation that is the beneficial owner of an interest in certain Class B Notes under the Indenture.

28. Upon information and belief, Talcott Notch CBO I (Delaware) Corp. ("Talcott Notch Corp.") is a Delaware corporation with its principal place of business in Wilmington, Delaware.

29. Talcott Notch Corp. is sued in this action as a claimant pursuant to 28 U.S.C. § 1335(a) because, upon information and belief, it is a co-issuer of Talcott Notch CBO I, a collateralized debt obligation that is the beneficial owner of an interest in certain Class D Notes under the Indenture.

30. Upon information and belief, Talcott Notch CBO I Ltd. ("Talcott Notch Ltd.") is a Cayman Islands company with its principal place of business in George Town, Grand Cayman, Cayman Islands, the British West Indies.

31. Talcott Notch Ltd. is sued in this action as a claimant pursuant to 28 U.S.C. § 1335(a) because, upon information and belief, it is a co-issuer of Talcott Notch CBO I, a collateralized debt obligation that is the beneficial owner of an interest in certain Class D Notes under the Indenture.

32. Upon information and belief, Tricadia CDO 2003-1 Corp. ("Tricadia Corp.") is a Delaware corporation with its principal place of business in Newark, Delaware.

33. Tricadia Corp. is sued in this action as a claimant pursuant to 28 U.S.C. § 1335(a) because, upon information and belief, it is a co-issuer of Tricadia CDO 2003-1, a collateralized debt obligation that is the beneficial owner of an interest in certain Class D Notes under the Indenture.

34. Upon information and belief, Tricadia CDO 2003-1, Ltd. ("Tricadia Ltd.") is a Cayman Islands company with its principal place of business in George Town, Grand Cayman, Cayman Islands, the British West Indies.

35. Tricadia Ltd. is sued in this action as a claimant pursuant to 28 U.S.C. § 1335(a) because, upon information and belief, it is a co-issuer of Tricadia CDO 2003-1, a collateralized debt obligation that is the beneficial owner of an interest in certain Class D Notes under the Indenture.

36. Upon information and belief, Mizuho Securities Co., Ltd. ("Mizuho") is a Japanese corporation with its principal place of business in Tokyo, Japan.

37. Mizuho is sued in this action as a claimant pursuant to 28 U.S.C. § 1335(a) because, upon information and belief, it is the beneficial owner of an interest in certain Preferred Shares under the Preferred Shares Agreement dated September 18, 2002, between and among Deutsche Bank Trust Company Americas as Preferred Shares Paying and Transfer Agent and Share Registrar and Landmark II CDO Ltd. as Issuer, as referred to in the Indenture. A true and complete copy of the Preferred Shares Agreement is attached as Exhibit B to this Complaint.

38. Upon information and belief, Sojitz Corporation ("Sojitz") is a Japanese corporation with its principal place of business in Tokyo, Japan.

39. Sojitz is sued in the action as a claimant pursuant to 28 U.S.C. § 1335(a) because, upon information and belief, it is the beneficial owner of an interest in certain Preferred Shares under the Preferred Shares Agreement as referred to in the Indenture.

40. Upon information and belief, Sojitz Corporation of America ("Sojitz America") is a New York corporation with its principal place of business in New York, New York.

41. Sojitz America is sued in the action as a claimant pursuant to 28 U.S.C. § 1335(a) because, upon information and belief, it is the beneficial owner of an interest in certain Preferred Shares under the Preferred Shares Agreement as referred to in the Indenture.

42. Upon information and belief, the Depository Trust Company ("DTC") is a limited purpose trust company organized under New York banking law with its principal place of business at 55 Water Street, New York, New York 10041.

43. DTC is sued in this action as a claimant pursuant to 28 U.S.C. § 1335(a) because of its role as the legal owner or holder of record of the entire outstanding amount of Notes, as such term is defined in Section 1.1 of the Indenture.

44. DTC is also sued in this action as a claimant pursuant to 28 U.S.C. § 1335(a) because of its role as the legal owner or holder of record of certain of the outstanding amount of Regulation S Global Preferred Shares ("Global Preferred Shares"), as such term is defined in Section 8(a)(i) of the Preferred Shares Agreement.

45. Each of the four classes of Notes (Classes A, B, C, and D) and the Preferred Shares differ from each other with respect to the amount and priority of payment of principal and interest to which they entitle their owner or holder under the Indenture and Preferred Shares Agreement.

46. Upon information and belief, DTC, as legal owner or holder of record of Notes and Global Preferred Shares, owns or holds Notes and Global Preferred Shares for the ultimate benefit of others.

47. Does 1 through 100 are other beneficial owners of interests in the Notes owned or held by DTC, of whose names or true identities as owners of a specific Class or Classes of such Notes the Trustee is ignorant.

48. Does 101 through 200 are other beneficial owners of interests in certain Global Preferred Shares owned or held by DTC, of whose names or true identities as owners of such Global Preferred Shares the Trustee is ignorant.

49. The Indenture established a Collateralized Debt Obligation that owns a portfolio of assets (the "Collateral").

50. The Collateral consists primarily of commercial loan obligations that were purchased with the proceeds from the sale of the Notes by or on behalf of the Co-Issuers.

51. The Notes mature on September 1, 2012.

52. On March 27, 2009, Elliott and Liverpool sent a notice of an Event of Default (the "Notice of Default") to the Trustee identifying themselves as holders of more than 25% percent of the aggregate outstanding amount of the Class A Notes. A true and complete copy of the Notice of Default is attached as Exhibit C to this Complaint.

53. The Notice of Default claimed that an Event of Default had occurred under Section 5.1(e) of the Indenture.

54. Section 5.1 (e) of the Indenture provides that an Event of Default occurs upon

> a default in the performance, or breach, of any other covenant, warranty or other agreement of the Co-Issuers in this Indenture which has a material adverse effect on the Holders of the Notes . . . and the continuation of such default or breach for a period of 30 days after written notice thereof shall have been given, by registered or certified mail or overnight courier, to the Co-Issuers and the Portfolio Manager by the Trustee or to the Co-Issuers, the Portfolio Manager and the Trustee by the Holders of at least 25% of the Aggregate Outstanding Amount of the Notes of the Controlling Class, specifying such default, breach or failure and requiring it to be remedied and stating that such notice is a 'Notice of Default' hereunder.

55. The Notice of Default asserted that an Event of Default had occurred as a result of the purchase of assets with maturity dates that were longer than Elliott and Liverpool claim were appropriate under the definition of "Collateral Debt Obligation" or "CDO" as set forth in Section 1.1 of the Indenture (the "Long Dated Assets").

56. As set forth in Section 1.1 of the Indenture, at subsection (f)(3)(ii) of the definition of CDO preceding the proviso portion of that definition, a CDO is an obligation which

provides for a fixed amount of principal "payable in Cash at maturity" and which matures on or prior to the "Stated Maturity."

57. As set forth in Section 1.1 of the Indenture, at subsection (f)(3)(ii) of the definition of CDO, an exception to otherwise existing maturity requirements exists to the effect that "Collateral Debt Obligations representing no more than 2.5% of the Aggregate Portfolio Principal Balance may have a maturity date later than the Stated Maturity subject to the following conditions," including that such obligations are rated at least Ba3 by Moody's Investor Service ("Moody's") and BB- by Standard & Poors.

58. As set forth in Section 1.1 of the Indenture, "Stated Maturity" is defined as:

> With respect to any Collateral Debt Obligation, the maturity date specified in such security or applicable Collateral Instrument; with respect to any Class A Note, Class B Note, Class C Note and Class D Note, the Payment Date in September 2012; provided that, if any such date is not a Business Day, such Stated Maturity shall be the next following Business Day.

59. The definition of Stated Maturity in Section 1.1 of the Indenture does not specify the year 2012 as the maturity date with respect to a CDO, but instead provides that the stated maturity for a CDO is the maturity date specified in that security.

60. The Notice of Default asserts that Long Dated Assets, as defined in that notice, totaled 12.37% of the aggregate principal portfolio balance as of the date of the Notice of Default.

61. The Notice of Default asserts that the acquisition of the Long Dated Assets, the subsequent sale of some of the Long Dated Assets, and the continued holding of other Long Dated Assets, has and has had a material adverse effect on Noteholders.

62. The Notice of Default refers to an August 15, 2008 notice from Moody's, placing the Class B Notes, the Class C Notes, and the Class D Notes on review for possible

downgrade because of additional risk posed by a significant concentration of underlying assets with maturities extending beyond the Notes' maturity date.

63. Upon information and belief, some of the current holders or owners of beneficial interests in Class A Notes acting as the Controlling Class purchased their notes or interests after Moody's distributed its August 15, 2008 notice to the market.

64. Pursuant to its obligations under Section 6.2 of the Indenture, the Trustee distributed a Notice to Holders on March 31, 2009 stating that it had received the Notice of Default and summarizing the assertions in that notice. A true and complete copy of the Trustee's March 31, 2009 Notice to Holders is attached as Exhibit D.

65. Aladdin Capital Management, LLC ("Aladdin") is the Portfolio Manager, as such term is defined in Section 1.1 of the Indenture, of the portfolio of Collateral under the Indenture.

66. After receipt of the Notice of Default, the Trustee contacted Aladdin concerning such notice.

67. Following its review of the Notice of Default, Aladdin provided the Trustee with an analysis of the portfolio of Collateral under the Indenture (the "Aladdin Analysis") supporting Aladdin's view that inclusion of the Long Dated Assets in that portfolio did not and does not have a material adverse effect on the Noteholders.

68. The Aladdin Analysis indicates that the market value of the portfolio of Collateral under the Indenture at the time the Notice of Default was higher than the value of a comparable portfolio containing similar assets without maturity dates beyond that of the Notes.

69. Section 5.14(c) of the Indenture provides that a majority of the Class A Notes can waive a Default and that "[u]pon any such waiver, such Default shall cease to exist,

and any Event of Default arising therefrom shall be deemed to have been cured, for every purpose of this Indenture . . . ."

70. Following its review of the Notice of Default, Aladdin informed the Trustee that Aladdin had had discussions in August 2008 with the prior holder or owner of a beneficial interest in a majority of the Class A Notes (the "Prior Class A Holder") concerning the sale of certain Long Dated Assets from the Collateral portfolio and that the Prior Class A Holder was satisfied with Aladdin's plan to sell such Long Dated Assets.

71. Following its review of the Notice of Default, Aladdin informed the Trustee that, pursuant to its discussions with the Prior Class A Holder, Aladdin had sold 85% of the Long Dated Assets within five months of those discussions.

72. Following its review of the Notice of Default, Aladdin informed the Trustee that the Prior Class A Holder's knowledge of the Long Dated Assets and approval of Aladdin's plan to sell Long Dated Assets should be deemed a waiver, pursuant to Section 5.14(c) of the Indenture, of any Default, thereby curing any Event of Default associated with any alleged acquisition of Long Dated Assets.

73. On April 24, 2009, the Trustee notified Noteholders that since receiving the Notice of Default, the Trustee had received additional information from Aladdin in which Aladdin: drew into question whether a Default had occurred and is continuing; indicated that if a Default had occurred and is continuing, such Default appears not to have had a material adverse effect on the holders of the Notes at the time of the Notice of Default; stated that the actions of the Prior Class A Holder should be viewed as waiver of any such Default; and stated that Aladdin does not believe that the Notice of Default set forth a sufficient basis for concluding that

an Event of Default had occurred. A true and complete copy of the Trustee's April 24, 2009 notice to this effect is attached as Exhibit E to this Complaint.

74. On April 27, 2009, Elliott, Liverpool, Structured Principal, SEI Managed High Yield, SEI Institutional High Yield, and SEI Structured Credit delivered an Authorization and Direction To Declare Acceleration to the Trustee (the "Authorization and Direction"). A true and complete copy of the Authorization and Direction is attached as Exhibit F to this Complaint.

75. The Authorization and Direction asserts that the parties who sent it collectively hold more than 50% of the Aggregate Outstanding Amount of the Notes of the Controlling Class and are therefore the Controlling Party, as defined in Section 1.1 of the Indenture.

76. The Authorization and Direction purports to direct the Trustee

> to declare the principal of the Notes to be immediately due and payable on the date hereof, and upon such declaration such principal, together with all accrued and unpaid interest thereon, and other amounts payable under the Notes in accordance with the Priory of Payments, shall become immediately due and payable.

77. Section 5.2(a) of the Indenture provides that the Controlling Party may direct the Trustee to declare the principal of all of the Notes to be immediately due and payable, but only if an Event of Default has occurred and is continuing:

> If an Event of Default shall occur and be continuing . . . with the consent of the Controlling Party, by notice to the Co-Issuers and the Portfolio Manager, the Trustee may, and at the written direction of the Controlling Party the Trustee will, declare the principal of all the Notes to be immediately due and payable, and upon any such declaration such principal, together with all accrued and unpaid interest thereon and other amounts payable hereunder in accordance with the Priority of Payments, shall become immediately due and payable.

78. Certain holders or owners or owners of beneficial interests in Notes or Preferred Shares have indicated to the Trustee orally and in writing that they disagree with the

- 13 -

analysis of the parties to the Notice of Default and the parties to the Authorization and Duration that an Event of Default has occurred and is continuing that permits the Controlling Party to direct acceleration.

79. If an Event of Default has occurred and is continuing, then the Authorization and Direction would, subject to other applicable provisions of the Indenture, be effective to direct the Trustee to accelerate under the Indenture.

80. Upon an acceleration under the Indenture, all distributions to Noteholders in excess of the amounts otherwise payable to the Class A Noteholders would be payable to the Class A Noteholders.

81. If an Event of Default has not occurred or is not continuing, then the Authorization and Direction would not be effective to direct the Trustee to accelerate under the Indenture.

82. If the Authorization and Direction would not be effective to direct the Trustee to accelerate under the Indenture, then all distributions to Noteholders in excess of the amounts otherwise payable to the Class A Noteholders would continue at this point to be payable to the other Noteholders or owners of Preferred Shares as provided by the Indenture.

83. The conflicting positions between or among various holders or owners or owners of beneficial interests in different Classes of Notes or Preferred Shares has created a dispute as to whether an Event of Default has occurred and is continuing and, as a result, whether the Authorization and Direction could be effective to direct the Trustee to accelerate under the Indenture.

84. The conflicting positions between or among various holders or owners or owners of beneficial interests in different Classes of Notes or Preferred Shares has created a

dispute as to whether the Trustee should pay certain distributions with respect to the Collateral that exceed the amount that would otherwise be payable to Class A Noteholders in the absence of acceleration under the Indenture pursuant to their Authorization and Direction.

85. Section 6.3(e) of the Indenture provides that

> the Trustee shall be under no obligation to exercise or honor any of the rights or powers vested in it by this Indenture at the request or direction of any of the Noteholders pursuant to this Indenture, unless such Noteholders shall have offered to the Trustee security or indemnity reasonably satisfactory to it against the costs, expenses and liabilities which might reasonably be incurred by it in compliance with such request and direction . . . .

86. No Noteholder has offered any such security or indemnity satisfying Section 6.3(e) of the Indenture to the Trustee with respect to the issues in this Interpleader Complaint.

87. Pending determination of the proper payment of distributions in excess of the amounts otherwise payable to the Class A Noteholders, the Trustee began, as of June 1, 2009, the most recent Payment Date as defined in Section 1.1 of the Indenture, holding all such amounts in a segregated account (the "Interpleader Escrow").

88. The Trustee has no interest in the respective rights claimed under the Indenture and Preferred Shares Agreement with respect to whether an Event of Default has occurred and is continuing and whether the Authorization and Direction would be effective to direct the Trustee to accelerate under the Indenture.

89. The Trustee has no interest as a claimant in the funds to be deposited in the Interpleader Escrow except to the extent of reasonable attorneys' fees, costs, and disbursements with respect to this action and with respect to the maintenance and distribution of amounts in the Interpleader Escrow.

90. Subject matter jurisdiction over this action is proper in this Court pursuant to 28 U.S.C. § 1335(a) because the Trustee has in its custody or possession $500 or more to which two or more Defendants claim, or may claim, to be entitled, and at least one of such Defendants has citizenship diverse from that of at least one other Defendant.

91. Personal jurisdiction over Defendants is proper in this Court pursuant to 28 U.S.C. §§ 1335(a) and 2361.

92. If any Defendant is not otherwise subject to jurisdiction and process, such Defendant is subject to the jurisdiction and process of this Court pursuant to 28 U.S.C. § 1655 because this action involves enforcement of a claim to property within this District.

93. Venue is proper in this Court pursuant to 28 U.S.C. § 1397 because one or more of the Defendants resides in this District.

WHEREFORE, the Trustee asks this Court:

A. To order Defendants, with respect to their respective rights on the issue of the existence and continuation of an Event of Default such that the Authorization and Direction would be effective to direct the Trustee to accelerate under the Indenture, and with respect to their respective rights to those funds now held or to be held in the Interpleader Escrow, to interplead and to settle all claims between themselves and any other persons who claim or may claim an interest, beneficial or legal, in such matters;

B. To order the Trustee to continue the Interpleader Escrow, and to continue to invest amounts deposited in the Interpleader Escrow in Eligible Investments, as such term is defined in Section 1.1 of the Indenture, and in accord with the Indenture;

C. To order that the Trustee, so long as it maintains the Interpleader Escrow separate and apart from other funds, not be required to post any bond pursuant to 28 U.S.C. § 1335(a)(2);

D. To order that the Trustee, to the extent that it may fail to maintain the Interpleader Escrow separate and apart from other funds of the Trustee, either post a bond pursuant to 28 U.S.C. § 1335(a)(2) payable to the Clerk of this Court in an amount equal to the funds held in the Interpleader Escrow as of the date of such order, or deposit such funds with the Clerk of Court;

E. To order the Trustee to make interim distributions from the Interpleader Escrow, if any, only by further order of this Court;

F. To order the Trustee, upon final judgment determining the respective interests of the Defendants and all other interested persons to distribution of the funds, to give or not give effect to the Authorization and Direction and distribute amounts then remaining in the Interpleader Escrow as directed by the Court;

G. Pending such final judgment, to enjoin Defendants and all claiming through or acting with them, or claiming any rights under the Indenture or Preferred Shares Agreement, or any interest in the Interpleader Escrow or the amounts deposited or to be deposited in it, from commencing or prosecuting any separate litigation concerning or relating to the issues in this action;

H. To discharge the Trustee from liability, conditioned upon its continued compliance with the future orders and judgment of the Court as described above with respect to the subject matter of this controversy; and

I. To award the Trustee its reasonable attorneys' fees, costs, and disbursements with respect to this action and the maintenance and distribution of amounts in the Interpleader Escrow.

Dated: June 4, 2009

                              NIXON PEABODY LLP

                By: _____
                              Christopher M. Mason (CM-7146)

                              437 Madison Avenue
                              New York, New York 10022
                              Telephone: (212) 940-3000
                              Facsimile: (866) 947-2229
                              cmason@nixonpeabody.com

                              Attorneys for Plaintiff Deutsche Bank Trust
                              Company Americas, as Trustee

Of Counsel:

Matthew C. Peluso (MP-1061)