UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEUTSCHE BANK TRUST COMPANY AMERICAS, as Trustee,<br><br>Plaintiff,<br><br>-against-<br><br>ELLIOTT INTERNATIONAL, L.P., et al.,<br><br>Defendants. | ECF CASE<br><br>Civ. No. 09-cv-5242 |
| ELLIOTT INTERNATIONAL, L.P., LIVERPOOL LIMITED PARTNERSHIP, STRUCTURED PRINCIPAL STRATEGIES, LLC, WELLS FARGO BANK, N.A. AND ZAIS INVESTMENT GRADE LIMITED II,<br><br>Cross-Claim Plaintiffs,<br><br>-against-<br><br>DOES 201 through 300,<br><br>Cross-Claim Defendants. | **NOTICE OF MOTION** |

PLEASE TAKE NOTICE that upon the annexed Memorandum of Law, the accompanying Affirmation of Brendan Zahner dated November 15, 2010 and the exhibits annexed thereto and the annexed Statement of Material Facts, the undersigned will move this Court for an Order granting Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1 of the Local Rules for the United States District Court for the Southern District of New York.

Dated: November 15, 2010
      New York, New York

SNR DENTON US LLP

By: /s/ Brendan E. Zahner
     Jonathan D. Forstot
     Brendan E. Zahner

1221 Avenue of the Americas
New York, New York 10020-1089
Telephone: (212) 768-6700
Fax: (212) 768-6800
jonathan.forstot@snrdenton.com
brendan.zahner@snrdenton.com

*Counsel for Elliott International, L.P.,*
*Liverpool Limited Partnership,*
*Structured Principal Strategies, LLC and*
*Wells Fargo Bank, N.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEUTSCHE BANK TRUST COMPANY AMERICAS, as Trustee,<br><br>               Plaintiff,<br><br>-against-<br><br>ELLIOTT INTERNATIONAL, L.P., et al.,<br><br>               Defendants. | ECF CASE<br><br>Civ. No. 09-cv-5242 |
| ELLIOTT INTERNATIONAL, L.P., LIVERPOOL LIMITED PARTNERSHIP, STRUCTURED PRINCIPAL STRATEGIES, LLC, WELLS FARGO BANK, N.A. AND ZAIS INVESTMENT GRADE LIMITED II,<br><br>             Cross-Claim Plaintiffs,<br><br>-against-<br><br>DOES 201 through 300,<br><br>             Cross-Claim Defendants. | |

## STATEMENT OF MATERIAL FACTS

1. The rights of the holders or owners of the Notes in the Landmark II CDO are governed by the Indenture among Landmark II CDO Ltd., Landmark II CDO, Inc. and Deutsche Bank Trust Company Americas, dated as of September 18, 2002 ("Indenture"). (Exhibit A at p. 78, section 2.7, p. 160, section 11.1(a)(i))

2. Under the Indenture, as long as Class A Notes are outstanding the Class A Notes are defined as the Controlling Class. (Exhibit A at p. 24)

3. Under the Indenture, the Controlling Party is defined to mean the Holders of a Majority of the Notes of the Controlling Class, with Majority meaning more than 50% of the Aggregate Outstanding Amount of the Notes of such Class. (Exhibit A at p. 35)

4. The Indenture gives only the Controlling Party the right to waive past Events of Default. (Exhibit A at p. 106, section 5.14)

5. Defendants/Cross-Claim Plaintiffs Elliott International, L.P. ("Elliott"), Liverpool Limited Partnership ("Liverpool"), Structured Principal Strategies, LLC ("Structured Principal") and Wells Fargo Bank, N.A. ("Wells Fargo", and collectively with Elliott, Liverpool and Structured Principal, the "Interpleader Claimants"), currently hold a Majority of the Aggregate Outstanding Amount of the Notes of the Controlling Class, and are therefore presently considered the Controlling Party under the Indenture. (Trustee's Response to Interrogatory No. 1, Exhibit B)

6. The Interpleader Claimants also hold at least 66⅔% of the Aggregate Outstanding Amount of the Controlling Class, which entitles them to direct the sale and liquidation of all or a portion of the Assets if there is an Event of Default. (Id.; Exhibit A at p. 102, section 5.5(a)(ii))

7. Aladdin Asset Management LLC ("Aladdin") is the Portfolio Manager under the Management Agreement dated as of September 18, 2002 between Landmark II CDO Ltd. and Aladdin (the "Management Agreement", Exhibit C).

8. As Portfolio Manager, Aladdin agreed to perform certain duties with respect to the collateral (i.e. the loans) securing the Notes, including selecting, buying and selling Collateral Debt Obligations subject to the terms and restrictions of the Indenture. (Id. at p. 4 section 2(c))

9. The Indenture's definition of Collateral Debt Obligation specifically describes the securities, loans or obligations that are eligible to be purchased by the Portfolio Manager. (Exhibit A at pp. 17-23)

10. The definition of an instrument that is eligible to be a Collateral Debt Obligation includes the requirement that any such obligation "mature on or prior to the Stated Maturity . . .," with the limited exception that no more than 2.5% of the overall portfolio may have "a maturity date later than the Stated Maturity" if certain ratings tests were met. (Exhibit A at clause (f)(3)(ii))

11. The Indenture includes a representation and warranty by the Issuer that the Collateral Debt Obligations included in the transaction satisfy the requirements of the definition of Collateral Debt Obligations under the Indenture. (Exhibit A at p. 92, section 3.3(h)(xix)) This representation and warranty is made both as of the Closing Date and as of the date of acquisition with respect to any Assets acquired after the Closing Date. (Id.)

12. It is an Event of Default under the Indenture "if any representation or warranty of the Co-Issuers made in this Indenture or in any certificate or writing delivered pursuant hereto proves to be incorrect when made," if such breach or default continues for 30 days after notice is given. (Exhibit A at p. 96, Section 5.1(e))

13. An Event of Default caused by a breach of a representation or warranty does not need to have a material adverse effect on Noteholders. (Exhibit A at p. 96, Section 5.1(e))

- 4 -

14. Aladdin has admitted that a number of assets it purchased do not meet the requirements of the definition of Collateral Debt Obligations under the Indenture, because, among other things, their maturity exceeds the Stated Maturity (the "Long-Dated Assets"). These admissions include the following statements:

    Aladdin Capital Management bought, sold and held certain loans that do not qualify as Collateral Debt Obligations (assets permissible to be acquired under the Indenture ("CDOs")). The volume of these assets was in excess of the 2.5% basket allowed for the transaction. (Exhibit D, November 3, 2009 Aladdin Memorandum)

    In a nutshell there was a technical violation of the Indenture - assets were purchased which exceeded the maturity of the CLO. (Exhibit E, August 7, 2009 email from John J. D'Angelo of Aladdin to Omar Zaghis, Stephen Mandella, Lorenzo Rodriguez and William Fish of Aladdin)

    Over a period of time [Aladdin] purchased various loans for the Landmark II CLO which had a stated maturity that was longer than the stated maturity allowed for eligible assets. (Exhibit F, Annex to August 7, 2009 email from Marc Schuman of Aladdin to John J. D'Angelo, William Griffin and William Fish of Aladdin)

15. Moody's Investors Service, an independent third party, found that that Landmark II transaction contained a significant amount of "securities with maturities past the legal maturity of the transaction." (Notice by Moody's Investors Service dated August 15, 2008, Exhibit G)

16. The purchase of the Long-Dated Assets violated the representation and warranty in section 3.3(h)(xix) of the Indenture that all assets included in the transaction satisfy the requirements of the definition of Collateral Debt Obligations under the Indenture. (Exhibit A at p. 92, section 3.3(h)(xix)

17. On June 4, 2009, Elliott, Liverpool, Structured Principal, SEI Managed High Yield, SEI Institutional High Yield, SEI Structured Credit and ZAIS Investment Grade Limited II delivered a Notice of Default to the Trustee ("Notice of Default", Exhibit H).

18. More than 30 days have passed since the Notice of Default was given and the Default has not been cured, making the breach of the representation and warranty an Event of Default under the terms of the Indenture. (Exhibit A at p. 96, section 5.1(e))

19. The prior Class A Noteholder that supposedly waived all Events of Default arising from the Long-Dated Assets was Goldman Sachs Asset Management ("GSAM"). (Exhibit J)

20. Under the Indenture the waiver of an Event of Default must be in writing and is effective when the instrument embodying the waiver is delivered. (Exhibit A at pp. 174-175, section 14.2(a), 14.3)

21. No written waiver has been produced in discovery by GSAM, Aladdin or Deutsche Bank.

22. GSAM did not own a Majority of the Class A Notes, and therefore was not the Controlling Party.  (Trustee's Response to Interrogatory No. 2 and 3, Exhibit B; GSAM's Supplemental Document Response, Exhibit I)

23. Because GSAM was not the Controlling Party, it did not have the ability to waive Events of Default under the Indenture.  (Exhibit A at p. 106, section 5.14)


Dated: November 15, 2010
       New York, New York

            SNR DENTON US LLP


            By: /s/ Brendan E. Zahner
              Jonathan D. Forstot
              Brendan E. Zahner

              1221 Avenue of the Americas
              New York, New York 10020-1089
              Telephone:  (212) 768-6700
              Fax:  (212) 768-6800
              jonathan.forstot@snrdenton.com
              brendan.zahner@snrdenton.com

              *Counsel for Elliott International, L.P.,*
              *Liverpool Limited Partnership,*
              *Structured Principal Strategies, LLC and*
              *Wells Fargo Bank, N.A.*